UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Nina R. Juergens,   Case No.: 13-49049-wsd
                    Chapter 13
    Debtor.         Hon. Walter Shapero
_____/

## OPINION DENYING CONFIRMATION OF DEBTOR'S FOURTH AMENDED CHAPTER 13 PLAN

Debtor proposed her Fourth Amended Chapter 13 Plan on June 12, 2014, which was objected to by the Michigan Department of Treasury ("Michigan Treasury") and the United States Internal Revenue Service ("IRS"). The Court held an evidentiary hearing as to factual issues and entertained briefs as to legal issues. Both objecting creditors hold allowed claims for tax debts secured by liens on Debtor's principal residence, 2307 Manchester Road in Ann Arbor. Michigan Treasury's secured claim is $50,376.91 and IRS's secured claim is $138,327.07. Although there are some other tax liens on the residence, there are no outstanding mortgages. Debtor's 60 month Plan proposes to pay Michigan Treasury and IRS debts as "Class Four-Secured Claims on which the Last Contractual Payment is Due Beyond the Length of the Plan" under 11 U.S.C. § 1322(b)(5), by (a) making monthly payments of $340 to Michigan Treasury and $340 to IRS; and (b) paying lump sums on the 60th month of the Plan in the amounts of $33,353 to Michigan Treasury and $118,000 to IRS. Debtor intends to fund these lump sum payments by obtaining a mortgage on the residence, and her Plan includes a provision stating "In the event additional funds are required beyond the mortgage proceeds, those funds will be by contribution of the debtor's mother."

1

Debtor testified that she operates Salon Vertigo, a hairdressing salon, as an unincorporated sole proprietorship, earning about $2,500 to $3,000 per month. From this income, she is able to make only the required $900 monthly Chapter 13 payments. Debtor valued her residence at approximately $225,000, based on asserted facts that (a) her mother purchased the residence for Debtor about three years ago for $154,000, and property values have since increased; (b) the State Equalized Value (purportedly representing half the fair market value) is $101,900; and (c) Debtor's neighbor, a realtor, informed Debtor of the sale prices of comparable houses in the neighborhood. Debtor further indicated that she talked to a mortgage company about obtaining a mortgage on her residence and, because of her currently poor credit, was informed that she would likely need 24-36 months of payments in a Chapter 13 plan to improve her credit to the point where she would be able to obtain such a mortgage.

Debtor's mother, Helen Juergens, testified as to her own assets and her financial ability to help fund Debtor's Plan. She is the sole owner of HPJ, Inc., a business that leases commercial properties for automotive service companies and which has annual net profits of roughly $154,000. She draws a $1,000 monthly salary, receives other unspecified periodic distributions, and also receives $1,500 per month from Social Security. She owns a condominium free and clear, which is valued at about $300,000. She is also the sole owner of an annuity currently valued at approximately $500,000. She purchased the subject residence for Debtor and has also provided sporadic assistance in the past to one of her sons in the approximate total amount of about $15,000.

The Court concludes that Debtor's Plan cannot be confirmed for multiple reasons. First, the Court sustains IRS's objection on the basis of 11 U.S.C. § 1325(a)(5)(B)(iii)(I), which provides: "…the court shall confirm a plan if… with respect to each allowed secured claim provided for by

2

13-49049-mlo    Doc 119    Filed 11/24/14    Entered 11/24/14 11:45:14    Page 2 of 5

the plan… the plan provides that… if… property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]" The Plan's proposed lump sum payments are effectively balloon payments that clearly violate the plain language of this provision. *In re Henning*, 420 B.R. 773, 788-91 (Bankr. W.D. Tenn. 2009). Debtor relies on *In re Davis*, 343 B.R. 326 (Bankr. M.D. Fla. 2006), which held that this provision is not an impediment to a debtor paying *the arrearage on a mortgage* in unequal payments, because equal monthly payments are not required when long term debt is being cured. A majority of courts have disagreed with *Davis'* holding. *See In re Cupolo*, 2013 WL 486338 (Bankr. E.D. Ky. Feb. 5, 2013). However, even if this Court were persuaded to agree with *Davis*, that holding is distinguishable because, here, (a) the debts are not curable "long term" debts such as an ongoing mortgage obligation; (b) Debtor did not enter into any payment plan with either objecting creditor; and (c) there is no default or arrearage to cure.

Second, for similar reasons, the Court is not persuaded by Debtor's reliance on § 1322(b)(5), which provides that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" Similarly, Debtor unpersuasively relies on § 1322(e), which provides "…if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Neither of these provisions is applicable because, we are here dealing with overdue tax debts originally payable in full by specified dates and thus, in the sense used in the statute, there are no payments due, no defaults thereunder, and no defaults or arrearages to cure.

3

Third, Debtor argues that the collection rules and guidelines of Michigan Treasury and IRS constitute "applicable nonbankruptcy law" as referenced in § 1322(e). Debtor asserts that, if those creditors are allowed to be paid in full in 60 months, they will receive "a windfall" because, absent the bankruptcy filing, Debtor could have entered into a payment plan longer than 60 months. Whether or not that is true, the Court does not see any "windfall" in the creditors receiving the treatment to which they are clearly entitled by the Bankruptcy Code. If Debtor wishes to pursue a Chapter 13 plan, it is her obligation to comply with the plain language of § 1325(a)(5)(B)(iii)(I).

The fourth concern relates to the feasibility standard of § 1325(a)(6). While the Court believes the Debtor proposed the Plan in good faith and she and her mother were credible witnesses, feasibility requires an objective and realistic assessment of the future. While certainty is not required, reasonable predictability is. The essence of the feasibility of this Plan depends entirely on a combination of (a) Debtor's ability to obtain a substantial mortgage in the future; and/or (b) her ability to obtain any other needed financial contribution from her mother. There is no expert testimony on the record as to the former aspect, specifically with regard to what the mortgage market might be, the amount of credit restoration necessary for Debtor to obtain such a mortgage, or the actual value of the property. To be sure, the good intentions and hopeful outlook are clear, but something more is required, as one court has relevantly stated:

> Setting aside the balloon payment issue for a moment, the debtors in the case at bar claim that they will be able to refinance the mortgage after one or two years of a consistent payment history. For the reasons stated by the *Acosta* court, this claim cannot serve as the basis for acceptance of their proposed treatment of Wells Fargo's claim. The debtors did not present any evidence of a commitment by a possible lender to refinance the mortgage. The only proof they attempted to present was Mr. Henning's testimony that he had spoken with a lender who said it might refinance the debt if the Hennings were able to make their chapter 13 plan payments consistently. There is no way for the Court to predict what the housing

4

13-49049-mlo    Doc 119    Filed 11/24/14    Entered 11/24/14 11:45:14    Page 4 of 5

Third, Debtor argues that the collection rules and guidelines of Michigan Treasury and IRS constitute "applicable nonbankruptcy law" as referenced in § 1322(e). Debtor asserts that, if those creditors are allowed to be paid in full in 60 months, they will receive "a windfall" because, absent the bankruptcy filing, Debtor could have entered into a payment plan longer than 60 months. Whether or not that is true, the Court does not see any "windfall" in the creditors receiving the treatment to which they are clearly entitled by the Bankruptcy Code. If Debtor wishes to pursue a Chapter 13 plan, it is her obligation to comply with the plain language of § 1325(a)(5)(B)(iii)(I).

The fourth concern relates to the feasibility standard of § 1325(a)(6). While the Court believes the Debtor proposed the Plan in good faith and she and her mother were credible witnesses, feasibility requires an objective and realistic assessment of the future. While certainty is not required, reasonable predictability is. The essence of the feasibility of this Plan depends entirely on a combination of (a) Debtor's ability to obtain a substantial mortgage in the future; and/or (b) her ability to obtain any other needed financial contribution from her mother. There is no expert testimony on the record as to the former aspect, specifically with regard to what the mortgage market might be, the amount of credit restoration necessary for Debtor to obtain such a mortgage, or the actual value of the property. To be sure, the good intentions and hopeful outlook are clear, but something more is required, as one court has relevantly stated:

> Setting aside the balloon payment issue for a moment, the debtors in the case at bar claim that they will be able to refinance the mortgage after one or two years of a consistent payment history. For the reasons stated by the *Acosta* court, this claim cannot serve as the basis for acceptance of their proposed treatment of Wells Fargo's claim. The debtors did not present any evidence of a commitment by a possible lender to refinance the mortgage. The only proof they attempted to present was Mr. Henning's testimony that he had spoken with a lender who said it might refinance the debt if the Hennings were able to make their chapter 13 plan payments consistently. There is no way for the Court to predict what the housing

4

13-49049-mlo    Doc 119    Filed 11/24/14    Entered 11/24/14 11:45:14    Page 4 of 5

market will be like in one or two years or whether the debtors will in fact be able to obtain the necessary refinancing after one or two years of consistent plan payments.

*In re Henning*, 420 B.R. at 790. As to the mother's expression of willingness to provide needed financial assistance, while laudable, the Court can at most only speculate as to what the needs of Debtor's mother herself might be in relation to her then own resources and financial obligations. This additional feasibility concern, together with the other conclusions of the Court, require the conclusion that under all of those facts and circumstances, confirmation of this Plan must be denied. The Court will contemporaneously enter an appropriate order to that effect.

**Signed on November 24, 2014**

                                                                  **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**